Rick Richmond (SBN 194962)
*rrichmond@larsonllp.com*
Andrew E. Calderón (SBN 316673)
*acalderon@larsonllp.com*
Jina Yoon (SBN 331948)
*jyoon@larsonllp.com*
**LARSON LLP**
555 South Flower Street, 30th Floor
Los Angeles, California 90071
Telephone:(213) 436-4888
Facsimile: (213) 623-2000

Attorneys for Defendants Doe 1, a Utah corporation sole, and Doe 2, a Utah nonprofit corporation

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN ROE DR 63,<br><br>Plaintiff,<br><br>vs.<br><br>DOE 1, A CORPORATION; DOE 2, A CORPORATION; DOE 3, AN ENTITY OF UNKNOWN FORM and DOES 4 to 100, Inclusive,<br><br>Defendants. | Case No. 5:24-cv-02509-MRA (SHKx)<br><br>Judge: Hon. Monica Ramirez Almadani<br>Magistrate Judge Shashi H. Kewalramani<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO REMAND CASE TO CALIFORNIA STATE COURT**<br><br>[*Filed concurrently with Declarations of Andrew E. Calderón, Jeffrey Berkenkamp, Branden Wilson and [Proposed] Order*]<br><br>Date: February 3, 2025<br>Time: 1:30 p.m.<br>Crtrm.: 10B |

## TABLE OF CONTENTS

**Page**


I. INTRODUCTION ... 8

II. BACKGROUND ... 9

A. Plaintiff's lawsuit. ... 9

B. Plaintiff is domiciled in California. ... 10

C. The Church is a Utah citizen. ... 10

D. The Temple Corporation is a Utah citizen. ... 11

E. The Stake is an unincorporated division of the Church. ... 11

III. LEGAL STANDARD ... 12

IV. ARGUMENT ... 13

A. Plaintiff failed to comply with Local Rule 7-3. ... 13

B. The Stake must be disregarded for jurisdictional purposes. ... 13

1. The Stake is a part of the Church—not a so-called "unincorporated association" separately subject to suit. ... 13

2. As an unincorporated division of the Church, the Stake cannot sue or be sued. ... 18

3. Even if it could be sued, the Stake would possess the citizenship of the Church. ... 20

C. The Stake is not a "forum defendant" and cannot defeat diversity on that basis. ... 22

D. The other prerequisites for diversity have been met. ... 25

1. Plaintiff is domiciled in California. ... 25

2. The $75,000 amount in controversy is satisfied. ... 26

E. Plaintiff's supplemental authorities do not require remand. ... 27

V. CONCLUSION ... 28

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*A.B. v. Regents of Univ. of California*,
No. 2:20-cv-09555-RGK-E, 2021 WL 3030191 (C.D. Cal. Jan. 8, 2021) ........ 26

*Adams v. W. Marine Prod., Inc.*,
958 F.3d 1216 (9th Cir. 2020) ........ 25

*Anderson v. Watts*,
138 U.S. 694 (1891) ........ 25

*B-K Lighting, Inc. v. Vision3 Lighting*,
No. 2:06-cv-02825-MMM-PLA, 2006 WL 8421831 (C.D. Cal. Nov. 14, 2006) ........ 14

*Baiul v. NBC Sports*,
732 F. App’x 529 (9th Cir. 2018) ........ 22

*Breitman v. May Co. Calif.*,
37 F.3d 562 (9th Cir. 1994) ........ 21

*Burger v. Kuimelis*,
325 F. Supp. 2d 1026 (N.D. Cal. 2004) ........ 20

*Carolina Cas. Ins. Co. v. Team Equip., Inc.*,
741 F.3d 1082 (9th Cir. 2014) ........ 25

*Choi v. Gen. Motors, LLC*,
No. 2:21-cv-05925-GW-MRW, 2021 WL 4133735 (C.D. Cal. Sept. 9, 2021) ........ 24

*Collins v. Garfield Beach CVS, LLC*,
No. 2:17-cv-03375-FMO-GJS, 2017 WL 2734708 (C.D. Cal. 2017) ........ 27

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
574 U.S. 81 (2014) ........ 12, 26

*Dechow v. Gilead Scis., Inc.*,
358 F. Supp. 3d 1051 (C.D. Cal. 2019) ........ 22

*Ehrman v. Cox Commc'ns, Inc.*,
932 F.3d 1223 (9th Cir. 2019) .......... 25

*Geographic Expeditions, Inc. v. Est. of Lhotka*,
599 F.3d 1102 (9th Cir. 2010) .......... 12

*Geppert v. Church of Jesus Christ of Latter-Day Saints, Inc.*,
No. 23-cv-05763-JSW, 2024 WL 495255 (N.D. Cal. Nov. 16, 2023) .......... 20

*Grancare, LLC v. Thrower*,
889 F.3d 543 (9th Cir. 2018) .......... 12

*Gustafson v. Alloyd Co.*,
513 U.S. 561 (1995) .......... 22

*Hong Kong Cont'l Trade Co. Ltd. v. Nat. Balance Pet Foods, Inc.*,
No. 2:22-cv-00571-JAK-AFM, 2023 WL 2664246 (C.D. Cal. Mar. 28, 2023) .......... 22, 23, 24

*Jane Roe JW 142 v. The Church of Jesus Christ of Latter-day Saints, et al.*,
No. 5:24-cv-02150-KK-SPx, 2024 WL 5182415 (C.D. Cal. Dec. 20, 2024) .......... 15, 16, 28

*Jane Roe KL 66 v. Doe 1, et al.*,
No. 2:24-cv-07661-AMO, 2024 WL 5264039 (N.D. Cal. Dec. 31, 2024) .......... 27

*Kenneth Rothschild Tr. v. Morgan Stanley Dean Witter*,
199 F. Supp. 2d 993 (C.D. Cal. 2002) .......... 26, 28

*Khashan v. Ghasemi*,
No. 2:10-cv-00543-MMM-CWx, 2010 WL 1444884 (C.D. Cal. Apr. 5, 2010) .......... 23

*L'Garde, Inc. v. Raytheon Space & Airborne Sys.*,
805 F. Supp. 2d 932 (C.D. Cal. 2011) .......... 18, 21

*Lamie v. United States Tr.*,
540 U.S. 526 (2004) .......... 23

*Lawton v. Hyundai Motor Am., Inc.*,
No. 8:23-cv-01797-JVS-KES, 2023 WL 8018100 (C.D. Cal. Nov. 20, 2023) .......... 24

*Lee v. TRW, Inc.*,
No. 2:02-cv-05172-FMC-RZx, 2003 WL 27382060 (C.D. Cal. May 15, 2003) ....... 20

*Lew v. Moss*,
797 F.2d 747 (9th Cir. 1986) ....... 25

*Lopez v. Kia Am., Inc.*,
693 F. Supp. 3d 1063 (C.D. Cal. 2023) ....... 12

*Mason v. Home Depot U.S.A., Inc.*,
No. 2:24-cv-02428-MRA-MAR, 2024 WL 3029500 (C.D. Cal. June 17, 2024) ....... 27

*Mohammed v. Watson Pharmaceuticals Inc.*,
No. 8:09-cv-00079-DOC-ANx, 2009 WL 857517 (C.D. Cal. Mar. 26, 2009) ....... 23

*NewGen, LLC v. Safe Cig, LLC*,
840 F.3d 606 (9th Cir. 2016), ....... 12

*Oliver v. Luner*,
No. 2:18-cv-02562-VAP-AFM, 2018 WL 5919471 (C.D. Cal. Aug. 3, 2018) ....... 27

*Peich v. Flatiron W., Inc.*,
No. 5:16-cv-00540-ODW-DTB, 2016 WL 6634851 (C.D. Cal. Nov. 9, 2016) ....... 20

*Rockymore v. Eurofins Donor & Prod. Testing, Inc.*,
No. 3:22-cv-00176-WHO, 2022 WL 2704122 (N.D. Cal. July 11, 2022) ....... 9, 19

*Roe AH 71 v. Doe 1, et al.*,
No. 2:24-cv-09544-FMO-JCx, 2024 WL 5233145 (C.D. Cal. Dec. 27, 2024) ....... 28

*Salzstein v. Bekins Van Lines, Inc.*,
747 F. Supp. 1281 (N.D. Ill. 1990) ....... 19

*Sandoval v. Republic Servs., Inc.*,
No. 2:18-cv-01224-ODW-KSx, 2018 WL 1989528 (C.D. Cal. Apr. 24, 2018) ....... 27

*Sanfilippo v. Match Grp. LLC*,
No. 20-55819, 2021 WL 4440337 (9th Cir. Sep. 28, 2021)....21

*Shenko v. Coulter*,
No. 2:22-cv-09232-MEMF-PVC, 2023 WL 3101523 (C.D. Cal. Feb. 28, 2023)....26

*Silva v. St. Anne Catholic Sch.*,
595 F. Supp. 2d 1171 (D. Kan. 2009)....19

*State Farm Mut. Auto. Ins. Co. v. Dyer*,
19 F.3d 514 (10th Cir. 1994)....25

*Stine v. Moore*,
213 F.2d 446 (5th Cir. 1954)....25

*Torres v. Slalom, Inc. et al.*,
No. 8:24-cv-02073-DOC-JDE, 2024 WL 4643084 (C.D. Cal. Oct. 30, 2024)....23

*Van Bradley v. Dep't of Child. & Fam. Servs.*,
No. 2:17-cv-06556-JFW-AGR, 2019 WL 587282 (C.D. Cal. Feb. 13, 2019)....26

*Von Bradley v. Dep't of Child. & Fam. Servs.*,
No. 2:17-cv-06556-JFW-AGR, 2018 WL 7291450 (C.D. Cal. Dec. 12, 2018)....26

*Zirkin v. Shandy Media, Inc.*,
No. 2:18-cv-09207-ODW-SSx, 2019 WL 626138 (C.D. Cal. Feb. 14, 2019)....23

**California Cases**

*Barr v. United Methodist Church*,
90 Cal. App. 3d 259 (1979)....16, 17, 18

*Church Mut. Ins. Co., S.I. v. GuideOne Specialty Mut. Ins. Co.*,
72 Cal. App. 5th 1042 (2021)....18

*Gee v. Greyhound Lines, Inc.*,
6 Cal. App. 5th 477 (2016)....18, 20

*Gigax v. Ralston Purina Co.*,
136 Cal. App. 3d 591 (1982) .......... 21

*Intellisoft, Ltd v. Wistron Corp.*,
No. H044281, 2019 WL 5204293 (Cal. Ct. App. Oct. 16, 2019) .......... 16

*Miller v. Super. Ct. in & for Riverside Cnty.*,
26 Cal. App. 41 (1914) .......... 9, 18, 20

*Siegal v. Super. Ct. In & For Los Angeles Cnty.*,
203 Cal. App. 2d 22 (1962) .......... 18

**Federal Statutes**

28 U.S.C.
§ 1441(b) .......... 27
§ 1446(a) .......... 12

**California Statutes**

California Code of Civil Procedure
§ 340.1 .......... 8, 10, 27

## I. INTRODUCTION

Plaintiff failed to comply with Local Rule 7-3's meet-and-confer requirement before filing his remand motion. Indeed, Plaintiff did not even attempt to include any statement of compliance as the Court requires. As a result, the Court need not read any further and should simply "strike or summarily deny the motion."[1]

If the Court is nevertheless inclined to consider this remand motion, the motion should be denied because the parties in this case are citizens of different states. Removal on the basis of diversity jurisdiction was proper. Removal cannot be defeated by simply naming a constituent part of a Utah-based and Utah-incorporated church as a supposedly separate legal entity subject to suit in California. For that reason, Plaintiff's request for remand must be denied.

The first named defendant, Doe 1, is the Church, which is formally known as "The Church of Jesus Christ of Latter-day Saints, a Utah corporation sole."[2] The Church is a Utah-based and Utah-incorporated 501(c)(3) nonprofit entity. Thus, the Church is a Utah citizen. Plaintiff is a California citizen. That should be the beginning and the end of the diversity analysis. But Plaintiff named two additional defendants.

The second named defendant, Doe 2, is the Temple Corporation of The Church of Jesus Christ of Latter-day Saints, which is an integrated auxiliary of the Church. The Temple Corporation is separately incorporated in Utah as a 501(c)(3) nonprofit entity and is headquartered in Utah. Thus, the Temple Corporation is a

---

[1] https://www.cacd.uscourts.gov/honorable-m%C3%B3nica-ram%C3%ADrez-almadani.

[2] Plaintiff refers to the defendants in the complaint by "Doe" designations as required by California Code of Civil Procedure section 340.1, subdivision (l) (2023) in actions for childhood sexual abuse where the plaintiff is over age 40 at the time of suit. The defendants' identities, however, are known. Plaintiff's counsel named and identified each of the defendants to defense counsel. Thus, Defendant Does 1–3 are not the same class of fictitious names as Does 4–100 whose identities are unknown.

Utah citizen, while Plaintiff is a California citizen. The Temple Corporation has the sole purpose of advancing the Church's mission through the ownership of temples. The Church's temples have nothing to do with this case. Naming this Church auxiliary as a defendant makes no sense and does not affect the diversity analysis.

The third named defendant, Doe 3, is the Rancho Cucamonga California Stake, which is an ecclesiastical subunit of the Church. This Stake is one of thousands of Church stakes, which are all ecclesiastical parts of the Church's worldwide organization. The Stake does not have a separate or different mission or purpose from that of the Church. Unlike the Church and the Temple Corporation, the Stake is not incorporated. The Stake is not registered with the California Secretary of State, the Stake has no registered agent, and the Stake owns no property.

In short, like thousands of other stakes, this Stake has no legal existence apart from the Utah-incorporated and Utah-based Church. It is a non-jural entity that is part of the incorporated Church. "Corporations are proper defendants; unincorporated divisions of them are simply that—parts of them." *Rockymore v. Eurofins Donor & Prod. Testing, Inc.*, No. 3:22-cv-00176-WHO, 2022 WL 2704122, at *3 (N.D. Cal. July 11, 2022). Plaintiff has shown "no legal basis to be able to sue an entity that does not have any independent legal status." *Id.*; *Miller v. Super. Ct. in & for Riverside Cnty.*, 26 Cal. App. 41, 44 (1914) (the only proper parties to lawsuits are "persons or other legal entities of which the law [will] take cognizance"). A plaintiff cannot defeat diversity by naming a defendant that *does not exist* as a legal entity. Plaintiff's attempt to do so here must be rejected.

## II. BACKGROUND

### A. Plaintiff's lawsuit.

Plaintiff was not a member of the Church. He alleges he visited Church services at an unknown address in the Alta Loma area of Rancho Cucamonga with a friend in 1972 when he was 10 years old. Compl. ¶ 33, Doc. No. 1-1. On that

occasion, Plaintiff claims he met "Perpetrator Smith," a purported "'Elder' and the youth teacher for Sunday religious classes." *Id.* During some subsequent visit, Plaintiff alleges Perpetrator Smith led him into a closet and sexually abused him. *Id.*

Now more than 50 years later, Plaintiff sues the Church, the Temple Corporation, and the Stake—but not the perpetrator—under the revival provisions of California Civil Code section 340.1 for negligence related claims and intentional infliction of emotional distress. Plaintiff contends all three Church defendants are responsible for the perpetrator's conduct and have overlapping liability for all causes of action. Compl. ¶¶ 55–96.

### B. **<u>Plaintiff is domiciled in California.</u>**

Plaintiff alleges he is a resident of Placer County, California. Compl. ¶ 3. He alleges the purported 1972 abuse occurred in San Bernardino County, California. *Id.* ¶ 18. Plaintiff does not allege he has lived anywhere other than California. Nor does he allege any relevant conduct occurred outside California.

The Church retained a private investigator to research Plaintiff's domicile. Berkenkamp Decl. ¶ 3. The Church's private investigator analyzed public records for Plaintiff. *Id.* ¶ 3–6. Public records show the following. Plaintiff has a current address in Placer County, California. *Id.* Plaintiff has been associated with addresses in California for the last 20 years. *Id.* Plaintiff has a history of employment in California. *Id.* Plaintiff registered to vote in California. *Id.* Plaintiff has had judgments entered against him in California. *Id.* Plaintiff does not challenge that he is domiciled in California.

### C. **<u>The Church is a Utah citizen.</u>**

The Church as a global religious body has 17 million members in 170 countries. Wilson Decl. ¶ 3. The Church has around seven million members in the United States, with about 730,000 in California. *Id.*

The Church is incorporated for secular purposes in Utah as a 501(c)(3) nonprofit corporation under the name "The Church of Jesus Christ of Latter-day

Saints, a Utah corporation sole." *Id.* ¶ 10. The Church headquarters is in Salt Lake City, Utah. *Id.* ¶ 4. The Church's overall governing bodies, which are The First Presidency and The Quorum of the Twelve Apostles, direct, control, and coordinate the Church's activities from Church headquarters in Salt Lake City, Utah. *Id.* ¶ 5. The Church is registered to do business in California. *Id.* ¶ 12.

**D. <u>The Temple Corporation is a Utah citizen.</u>**

The Temple Corporation is an auxiliary and supporting organization of the Church. Wilson Decl. ¶ 25. The Temple Corporation advances the Church's mission through the ownership of temples. *Id.* The Temple Corporation is incorporated in Utah as a 501(c)(3) nonprofit corporation. *Id.* The Temple Corporation's headquarters is in Salt Lake City, Utah. *Id.* The Temple Corporation's officers direct, control, and coordinate the Temple Corporation's activities from Temple Corporation headquarters in Salt Lake City, Utah. *Id.* Plaintiff does not allege any involvement of a Church temple in his complaint.

**E. <u>The Stake is an unincorporated division of the Church.</u>**

Like thousands of other stakes, this Stake is an ecclesiastical grouping of congregations under the Church. In the Church, the congregations where members worship weekly are called "wards." *Id.* ¶ 6. A "ward" is a congregation of 200 to 500 members of the Church. *Id.* "Branches" are smaller congregations of Church members, similar to wards. *Id.* There are about 14,593 wards and branches in the United States, including about 1,112 in California. *Id.*

In the Church's hierarchical organizational structure, a stake is a group of wards and branches. *Id.* ¶ 7. Stakes usually consist of 5 to 12 wards. *Id.* There are about 1,693 stakes in the United States, including about 147 in California. *Id.*

Wards and stakes are ecclesiastical divisions of the Church. *Id.* ¶ 8. The Church organizes, administers, and controls wards and stakes through a hierarchical leadership structure. *Id.* ¶ 16–19. Individual Church members have no authority to establish their own wards and stakes. *Id.* ¶ 24. Local volunteers serve in ward and

stake positions, such as teachers, librarians, and executive secretaries. *Id.* ¶ 9. Donations received by local clergy are transferred to the Church and the Church in turn allocates funding to local wards and stakes. *Id.* ¶ 21.

The Stake is unincorporated. *Id.* ¶ 15. It is not registered with the California Secretary of State. *Id.* The Stake has no registered agent. *Id.* It has no mission or purpose distinct from the Church at large. *Id.* ¶ 16. The Stake is one of thousands of stakes organized and administered by the Church. *Id.* ¶ 7. It pursues the common interest and mission of the Church. *Id.* ¶ 16.

The Church funds the Stake. *Id.* ¶ 21. All funds, records, and real estate used by the Stake are property of the Church. *Id.* ¶ 19. The Stake owns no real estate. *Id.* ¶ 20. Church officials appoint the president of the Stake and must approve the appointment of any bishops of wards within Stake. *Id.* ¶¶ 9, 24. The Stake is subordinate to the Church in all aspects as an internal ecclesiastical division. *Id.* ¶¶ 8, 16, 18.

## III. LEGAL STANDARD

"A defendant may remove any civil action brought in a State court of which the district courts have [diversity] jurisdiction." *Grancare, LLC v. Thrower*, 889 F.3d 543, 548 (9th Cir. 2018) (citation, alteration, and internal quotation marks omitted). Diversity jurisdiction exists when a plaintiff's citizenship is diverse from each defendant's citizenship and the amount in controversy exceeds $75,000. *See Lopez v. Kia Am., Inc.*, 693 F. Supp. 3d 1063, 1067 (C.D. Cal. 2023).

The Church's burden to plead diversity is low. "[A]t the pleading stage, allegations of jurisdictional fact need not be proven unless challenged." *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 614 (9th Cir. 2016), *as amended*. The notice of removal need only contain "a short and plain statement of the grounds of removal." 28 U.S.C. § 1446(a); *see also Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014). A defendant need only demonstrate "by a preponderance of the evidence, that removal is proper." *Geographic Expeditions,*

*Inc. v. Est. of Lhotka*, 599 F.3d 1102, 1107 (9th Cir. 2010).

## IV. ARGUMENT

Plaintiff's motion should be stricken or summarily denied for failure to comply with the Court's meet-and-confer requirements. Even if it had been properly filed, the remand motion should be denied. This is a dispute between a California citizen and a Utah church. The Stake is essentially a sham defendant because it is an unincorporated organizational part of the Church that cannot be sued. All other requirements for diversity jurisdiction are satisfied and are uncontested: Plaintiff is domiciled in California, the Church and Temple Corporation are Utah citizens, and the amount in controversy exceeds $75,000.

### A. Plaintiff failed to comply with Local Rule 7-3.

Plaintiff did not meet and confer regarding the filing of this motion as required by Local Rule 7-3. Nor did Plaintiff include any statement of compliance as the Court requires among its important requirements.[3] For that reason alone, the Court should strike or summarily deny Plaintiff's motion.[4]

### B. The Stake must be disregarded for jurisdictional purposes.

#### 1. The Stake is a part of the Church—not a so-called "unincorporated association" separately subject to suit.

The Stake is an unincorporated division of the Church, which *is* incorporated. The Church is incorporated at its highest level, meaning its constituent parts—the local wards and stakes—are part of the incorporation. The Stake is not a separate

[3] https://www.cacd.uscourts.gov/honorable-m%C3%B3nica-ram%C3%ADrez-almadani.

[4] Plaintiff's counsel is aware of Local Rule 7-3. Defense counsel is involved in dozens of other cases with plaintiff's counsel and have met and conferred under Local Rule 7-3 for different motions in other cases. Calderón Decl. ¶ 2. Plaintiff presents no excuse in his motion and should not be rewarded nor permitted to re-file after consciously disregarding the Local Rule and the Court's requirements.

legal entity. It is an ecclesiastical division of the incorporated Church. The Stake is one of thousands of similar ecclesiastical divisions within the hierarchical structure of the Church that are organized and governed by the Church to advance the common interests and mission of the Church.

Contrary to what Plaintiff argues, the stake is not a so-called "unincorporated association" with its own separate legal existence. Mot. at 10–13, Doc. No. 8-1. "The mere fact that a corporate entity is subdivided into unincorporated departments or divisions does not transform those departments or divisions into separate legal entities." *B-K Lighting, Inc. v. Vision3 Lighting*, No. 2:06-cv-02825-MMM-PLA, 2006 WL 8421831, at *2 (C.D. Cal. Nov. 14, 2006) (citing *Touche Ross & Co. v. State Bd. of Equalization*, 203 Cal. App. 3d 1057, 1067 (1988)).

Plaintiff does not even allege in his complaint that the Stake is an unincorporated association. He alleges it is an entity of "unknown form." Compl. ¶ 7. Plaintiff alleges the Stake is "duly organized" and "registered to do business in California," *id*., which are disproven by the judicially noticeable absence of any registration with the California Secretary of State.

Plaintiff's remaining allegations directly undermine his claim that the Stake is an unincorporated association. Instead, Plaintiff's allegations prove the opposite, which is the Stake is simply part of the incorporated Church. For example, Plaintiff alleges the Stake operates "at the direction of and under the control of" the Church. Compl. ¶ 7. He alleges the Church's "First Presidency and the Quorum of the Twelve Apostles declare and establish policy, and oversee the entire Church, including every Stake and Ward in California." *Id*. ¶ 23. Plaintiff alleges stakes are part of the Church's hierarchical structure organized by "Areas" that are overseen by an assigned member of the Quorum of the Seventy who reports to the Quorum of the Twelve Apostles. *Id*. ¶¶ 24–25. He alleges that stake presidents "act[] under the direction for [sic] the Quorum of the Seventy in his Area" *Id*. Plaintiff alleges "Stake Presidents, acting with approval of the First Presidency, can call a member to

become a Bishop." *Id.* Plaintiff also alleges membership records are transmitted to and controlled by the Church. *Id.* ¶ 34. He alleges local ward and stake leaders follow the President of the Church's guidance on responding to abuse. *Id.* ¶ 41. Plaintiff even alleges his abuse occurred on *Church* premises. *Id.* ¶ 64.

In sum, Plaintiff's own factual allegations prove the Stake is not an "organic entity," but is, instead, "wholly subsumed" by the Church. Mot. at 5. Plaintiff carefully alleged how the Stake is organized, managed, and controlled by the Church. Plaintiff cannot now undo that accurate factual description of the relationship between the Church and the Stake. In any event, the Church has established the Stake is part of the incorporated Church. *See* Wilson Decl.

This case is jurisdictionally indistinguishable from *Jane Roe JW 142 v. The Church of Jesus Christ of Latter-day Saints, et al.*, No. 5:24-cv-02150-KK-SPx, 2024 WL 5182415 (C.D. Cal. Dec. 20, 2024), which is one of the dozens of other abuse cases recently filed by Plaintiff's lawyers on behalf of other clients. There, the court recently rejected the remand motion argument that a similar local, unincorporated stake of the Church is an independent legal entity for jurisdictional purposes. *Roe JW 142*, at *2. Like Roe JW 142 argued there, claiming the Menifee Stake is a local independent legal entity destroying diversity, Plaintiff here advances the same argument about the Rancho Cucamonga Stake. *Id.* at *1–2; *see also* Mot. at 4–6, 10–14. In both cases, plaintiffs advance the same argument that their respective defendant stakes are local independent entities because "[e]ach stake is headed by a Stake President and comprised of Stake clerks, secretaries, councils, and committees." *Roe JW 142*, at *2; Mot. at 4.

The court in *Roe JW 142* rejected this argument, explaining that "this hierarchy is part of defendant LDS' formation for local churches, and local church leaders are subject to such organization as outlined by [the Church's own] General Handbook." *Roe JW 142*, at *3. Here, as in *Roe JW 142*, Plaintiff relies entirely on

Church-generated sources that confirm the hierarchical structure of the Church and its control over its stakes.[5] *Id.*

Plaintiff's exclusive reliance on *Barr v. United Methodist Church*, 90 Cal. App. 3d 259 (1979) is misplaced.[6] Mot. at 11–12. In *Barr*, the California Court of Appeal determined whether the United Methodist Church ("UMC") was an "unincorporated association." *Id*. at 263–66. After analyzing UMC's organizational structure, the court held that UMC was an unincorporated association that could be recognized as a legal entity. *Id*. at 267–270.

At the outset, "[a]n internal division of a company or corporation is dissimilar to the types of unincorporated associations discussed in *Barr*." *Intellisoft, Ltd v. Wistron Corp.*, No. H044281, 2019 WL 5204293, at *12 (Cal. Ct. App. Oct. 16, 2019). The court's decision in *Barr* was based largely on the concept of "fairness." And "fairness does not require that an internal division of a company or corporation be recognized as a legal entity." *Id*. After all, "[t]hose whose rights have been violated by the internal division may file a lawsuit against the … corporation itself." *Id*. Here, the Church is already a defendant.

To the extent *Barr* is helpful here, it describes the UMC as a global hierarchical church where "the local church is a part of the whole body of the general church and is subject to the higher authority of the organization and its laws and regulations." *Id*. at 268–69 (quoting *Carnes v. Smith*, 236 Ga. 30, 33 (1976)).

---

[5] Every source Plaintiff relies on to provide information about the stake is a *Church* source that reflects the Church's control over its stakes and wards. *See* Welling Decl., Doc. 8-2, ¶ 4, Ex. 2 (the *Church's* General Handbook); *Id*. ¶ 5, Ex. 3 (*BYU* article); Mot. at 4 n.1 (*Church* website defining stakes); *Id*. at 5 n.5 (*Church* website meetinghouse locator showing the Rancho Cucamonga Stake as one of its subunits).

[6] The reasoning in *Barr* has been criticized. *See Chestnut v. United Methodist Church*, 215 N.Y.S.3d 376, 391 (App. Div. 2024) (recognizing *Barr* is "based upon questionable reasoning").

Plaintiff acknowledges those hierarchical similarities between the UMC and the Church at their highest levels, with the UMC recognized as a separate legal entity subject to suit as an "unincorporated association" and the Church subject to suit as an incorporated non-profit corporation. There are also obvious similarities at the lower level between a UMC "district" and a Church stake, both as constituent parts of their respective hierarchies. Mot. at 12.[7] The similarities end there.

The highest-level UMC is not like a local stake, any more than the Church is like a local Methodist "district." That is amply demonstrated by considering the factors that persuaded the court in *Barr* to find the UMC was an "unincorporated association" subject to suit.

Unlike the UMC, the Stake does not have the "highest judicatory body" for members within its organization, *Barr*, 90 Cal. App. 3d at 268; rather, the President of the Church is the highest authority. Wilson Decl. ¶¶ 4–5.

Unlike the UMC, the Stake does not have its own "book of law," *Barr*, 90 Cal. App. 3d at 268, but is subject to the Church's General Handbook. Wilson Decl. ¶ 18.

Unlike the UMC, the Stake has no "central treasury," *Barr*, 90 Cal. App. 3d at 269, because donations received by ecclesiastical leaders within the Stake are remitted to the Church and the Church in turn allocates funds back to the congregations within the Stake. Wilson Decl. ¶ 21.

---

[7] *Glossary: District*, THE PEOPLE OF THE UNITED METHODIST CHURCH, https://www.umc.org/en/content/glossary-district#:~:text=Groups%20of%20churches%20in%20a,provide%20training%20and%20mission%20opportunities.&text=Each%20district%20is%20led%20by,oversees%20programs%20within%20the%20district.&text=In%20the%20US?,Find%20your%20district%20here.&text=From%20United%20Methodist%20Member%27s%20Handbook,24.&text=From%20What%20Every%20Teacher%20Needs,30 (last visited Nov. 19, 2024).

Unlike the UMC, the Stake has no appointed agent "to take all necessary legal steps" to protect its interests, *Barr*, 90 Cal. App. 3d at 269; rather, it is the Church that retains counsel and protects the interests of the Church as a whole, including its internal divisions. Wilson Decl. ¶ 26.

Unlike the UMC, the Stake is not "a named insured on a high limit contract of insurance," *Barr*, 90 Cal. App. 3d at 269, as it has no assets and any judgment would be paid by the Church. Wilson Decl. ¶¶ 20, 26; *see also Church Mut. Ins. Co., S.I. v. GuideOne Specialty Mut. Ins. Co.*, 72 Cal. App. 5th 1042, 1059 (2021) (considering that the congregation purchased and insured the church property and made premium payments for 18 years when finding that it was an unincorporated association).

The highest-level UMC and this local Stake are not alike. The Stake is not an "unincorporated association" as the UMC was found to be.

2. As an unincorporated division of the Church, the Stake cannot sue or be sued.

In any lawsuit, the only proper parties are "persons or other legal entities of which the law [will] take cognizance." *Miller*, 26 Cal. App. at 44; *accord Gee v. Greyhound Lines, Inc.*, 6 Cal. App. 5th 477, 481 n.2 (2016) (something that is not a legal entity "can neither sue nor be sued") (citation omitted); *Siegal v. Super. Ct. In & For Los Angeles Cnty.*, 203 Cal. App. 2d 22, 24 (1962) (similar). "Ninth Circuit precedent holds that, unlike a legally incorporated subsidiary, an unincorporated division of a corporation does not possess the formal separateness required and is therefore not an independent entity for jurisdictional purposes." *L'Garde, Inc. v. Raytheon Space & Airborne Sys.*, 805 F. Supp. 2d 932, 939 (C.D. Cal. 2011) (citing *Breitman v. May Co. Calif.*, 37 F.3d 562, 564 (9th Cir. 1994) [affirming diversity jurisdiction existed because an unincorporated division did not possess independent citizenship]).

"[U]nincorporated divisions . . . are simply that—parts of [a corporation]." *Rockymore*, 2022 WL 2704122, at *3. "[B]y definition a corporate division is not a separate legal entity and hence is not suable." *Salzstein v. Bekins Van Lines, Inc.*, 747 F. Supp. 1281, 1282 n.1 (N.D. Ill. 1990). "Corporations are proper defendants; unincorporated divisions of them are simply that—parts of them." *Rockymore*, 2022 WL 2704122, at *3.

This case is like *John DZ 20, et al. v. Doe 1*, No. 22CV408645, filed in Santa Clara Superior Court. Calderón Decl. ¶ 3, Ex. A. In that case, plaintiffs sued a ward and a local stake of the Church. The Church made a special appearance to move to quash the purported service of the summons on the ward and stake. The court granted the motion:

> Defendant Ward and Defendant State are sued in this case as unincorporated associations, but [they] are not unincorporated associations. Defendant Ward and Defendant Stake are parts of the Church which exists in the secular world as Church Corporation. Church members are part of the Church, not their local ward or stake. When Church members move, they attend different wards, but their membership does not change. Church members attend services in any ward they choose, often doing so when traveling. Ward and stake boundaries change as Church membership grows or shrinks.

*Id*.

Similarly, in a case involving the Catholic Church, the plaintiffs sued a Catholic school and a parish, neither of which was incorporated, along with the Catholic Diocese of Wichita, which was incorporated in the higher Catholic hierarchy. *See Silva v. St. Anne Catholic Sch.*, 595 F. Supp. 2d 1171 (D. Kan. 2009). The court dismissed the unincorporated school and parish, refusing to consider them for jurisdictional purposes because they are not "separate legal entities from the Catholic Diocese of Wichita, a Kansas Corporation." *Id*. at 1179 (citing *Fuller v. Woodland Racing*, No. 92–2317–GTV, 1994 WL 171408, at *2–3 (D. Kan. Apr. 7, 1994) (dismissing improperly named defendants as non-entities

without capacity to be sued)); *see also Burger v. Kuimelis*, 325 F. Supp. 2d 1026, 1033 (N.D. Cal. 2004) (dismissing a defendant that was not "legally separate from its owner").

Plaintiff cites *Geppert v. Church of Jesus Christ of Latter-Day Saints, Inc.*, No. 23-cv-05763-JSW, 2024 WL 495255 (N.D. Cal. Nov. 16, 2023). Mot. at 8. But *Geppert* proves the Church's point. Plaintiff acknowledges that "[a] majority of the Stakes in California are unincorporated …." Mot. at 5. For unique reasons, the stake at issue in *Geppert* was one of a handful of stakes in California for which the Church (years ago) incorporated an affiliated legal entity. The issue in *Geppert* was not whether the Corporation of the President of the San Jose Stake of the Church was a legal entity. It plainly was. The issue was whether that legal entity could be held liable for the alleged actions at issue. *See Geppert*, 2024 WL 495255, at *4.

For these reasons, this Stake has no capacity to be sued, and is thus entitled to dismissal. *See Miller*, 26 Cal. App. at 44 (In any lawsuit, the only proper parties are "persons or other legal entities of which the law [will] take cognizance."); *Gee*, 6 Cal. App. 5th at 481 (something that is not a legal entity "can neither sue nor be sued"); *Burger*, 325 F. Supp. 2d at 1033 (dismissing a defendant that was not "legally separate from its owner"). There is no possibility of recovery against a non-existent legal entity that cannot be sued.

3. <u>Even if it could be sued, the Stake would possess the citizenship of the Church.</u>

"Unincorporated divisions of a company take on the corporate parent's principal place of business …." *Peich v. Flatiron W., Inc.*, No. 5:16-cv-00540-ODW-DTB, 2016 WL 6634851, at *2 (C.D. Cal. Nov. 9, 2016). "The Court must focus on the corporation as a whole, not upon an unincorporated division of a corporation, when determining the citizenship of the corporation for diversity purposes." *Lee v. TRW, Inc.*, No. 2:02-cv-05172-FMC-RZx, 2003 WL 27382060, at *2 (C.D. Cal. May 15, 2003).

In *Sanfilippo v. Match Grp. LLC*, No. 20-55819, 2021 WL 4440337 (9th Cir. Sep. 28, 2021), the plaintiff sued both Tinder and Match Group, Inc., contending that Tinder was a forum defendant and defeated diversity. But Tinder had merged with Match Group before the lawsuit was filed, becoming a division of Match Group and not a separate legal entity. As the Ninth Circuit explained, "following Tinder's merger with Match Group, Inc., Tinder ceased to exist as a separate entity" and "continues to exist solely as an unincorporated division of Match Group." *Id.* at *1. Thus, the court refused to consider Tinder for assessing diversity. "Because '[a] division of a corporation … is not an independent entity for jurisdictional purposes,' the district court did not err by considering only Match Group, LLC's citizenship for purposes of assessing its jurisdiction." *Id.* (citing *Breitman*, 37 F.3d at 564).

Here, the Stake is an unincorporated division of the Church, which is a Utah citizen. *See* Compl. ¶ 5, Doc. No. 1-2. Thus, even if the Stake's citizenship is considered, the Stake is a Utah citizen for diversity jurisdiction purposes.[8]

---

[8] The circumstances in which courts have found an internal division to be suable are rare and do not apply here. Some California courts have found an unincorporated division has the capacity to be sued when it operates primarily as a separate business entity. But even when courts have found that an unincorporated division may be sued, the unincorporated divisions have still adopted the citizenship of their parent corporation for jurisdictional purposes. *See L'Garde*, 805 F. Supp. 2d at 939; *Breitman*, 37 F.3d at 564.

In *Gigax v. Ralston Purina Co.*, 136 Cal. App. 3d 591, 596 (1982), the unincorporated division had separate legal and financial departments employed by the division that dealt solely with the division's operations. Additionally, the division's employees perceived the division to be their employer and had no knowledge of any connection to the parent corporation. *Id.* at 596. The division had also been sued on occasion in California courts and identified themselves as "a California Corporation." *Id.* From those facts, the California Court of Appeal determined the division was not "merely a smaller part of an integrated whole," but a division that "operate[d] as a separate business entity." *Id.* at 602.

### C. <u>The Stake is not a "forum defendant" and cannot defeat diversity on that basis.</u>

Plaintiff's attempt to defeat diversity by adding the Stake as a "forum defendant" in California will not work for one additional reason. That is because, as Plaintiff concedes, no defendant has yet been served in this case. As a result, the so-called "forum defendant" rule is inapplicable because it solely considers the domicile of defendants served at the time of removal. *See, e.g., Dechow v. Gilead Scis., Inc.*, 358 F. Supp. 3d 1051, 1055 (C.D. Cal. 2019) (adopting "the plain language interpretation of § 1441(b)(2) which requires a party to be properly joined *and* served before the forum defendant rule may limit the Court's jurisdiction"); *Hong Kong Cont'l Trade Co. Ltd. v. Nat. Balance Pet Foods, Inc.*, No. 2:22-cv-00571-JAK-AFM, 2023 WL 2664246, at *3 (C.D. Cal. Mar. 28, 2023) ("This Court has previously concluded that the plain text of Section 1441(b)(2) permits snap removal.").[9]

[9] "Adopting any other interpretation of the statute would violate the Court's mandate to enforce a statute according to its text," referring to the text of section 1331(b)(2). *Dechow*, 358 F. Supp. 3d at 1054. In affirming that section 1441(b)(2) requires a party to be properly "joined and served before the forum defendant rule may limit the Court's jurisdiction," the court in *Dechow* relied on the Ninth Circuit's interpretation of an analogous removal provision. *Id*. at 1056–57. Specifically, the *Dechow* court pointed to section 1446(b)(2)(A), which contains the identical words and requirement, "properly joined and served." § 1446(b)(2)(A) ("all defendants who have been properly joined and served must join in or consent to the removal of this action.") (emphasis added). The Ninth Circuit has explicitly held that at the time of removal, only those defendants who have been properly joined and served need to provide their consent. *Baiul v. NBC Sports*, 732 F. App'x 529, 531 (9th Cir. 2018). It follows that pursuant to well-established rules of statutory construction, the same plain meaning of "joined and served" in 1441(b)(2) should be applied here. *See Gustafson v. Alloyd Co.*, 513 U.S. 561, 570 (1995) (recognizing that "the normal rule of statutory construction [is] that identical words used in different parts of the same act are intended to have the same meaning) (internal quotes and citations omitted).

Plaintiff's contrary argument runs counter to the prevailing weight of authority. Recently, in *Mayes v. Am. Hallmark Ins. Co. of Texas*, the Ninth Circuit held that "[t]he plain language of § 1446(b)(1) suggests that a defendant may file a notice of removal once it has received a copy of the complaint, whether it received the complaint through formal 'service or otherwise.'" 114 F.4th 1077, 1078 (9th Cir. 2024); *see also Hong Kong,* at *3 (reviewing decisions of the Second, Third, and Fifth Circuits, which have all adhered to the plain text of the statute and recognized so-called "snap removals" before service of complaints); *see also Zirkin v. Shandy Media, Inc.*, No. 2:18-cv-09207-ODW-SSx, 2019 WL 626138, at *4 (C.D. Cal. Feb. 14, 2019) (explaining that "the Court is unwilling to effectively erase language from a statute by ignoring the language 'and served' in the Forum Defendant Rule and tread dangerously into legislative province").

Plaintiff's misplaced reliance on outlier decisions asks this Court to ignore the governing principles of statutory construction that have compelled many courts to recognize "snap removals" before service.[10] *See Lamie v. United States Tr.*, 540

[10] Plaintiff relies on inapposite authority. *See* Mot. at 20–23, citing *Llanos v. Delta Air Lines, Inc.*, No. 2:19-cv-10575-VAP-ASx, 2020 WL 635477 (C.D. Cal. Feb. 11, 2020) (remanding where the in-state defendant made intentional misrepresentations about accepting service); *Torres v. Slalom, Inc. et al.*, No. 8:24-cv-02073-DOC-JDE, 2024 WL 4643084 at *4 (C.D. Cal. Oct. 30, 2024) (remanding because substituted service on the forum defendant was initiated the day before removal, plaintiff had attempted personal service six times prior, and the forum defendant did not appear to be a sham defendant); *Standing v. Watson Pharm. Inc.*, No. 2:09-cv-00527 DOC-ANx, 2009 WL 842211, at *1 (C.D. Cal. Mar. 26, 2009) (remanding when the case was removed only one day after the complaint was filed); *Khashan v. Ghasemi*, No. 2:10-cv-00543-MMM-CWx, 2010 WL 1444884, at *3 (C.D. Cal. Apr. 5, 2010) (forum defendant was "integral to [the plaintiff's] claims and that he ha[d] not been joined solely for the purpose of defeating removal," where here the alleged forum defendant is *not* integral to Plaintiff's claims and *was* joined solely for the purpose of defeating removal); *Mohammed v. Watson Pharmaceuticals Inc.*, No. 8:09-cv-00079-DOC-ANx, 2009 WL 857517, at *4 (C.D. Cal. Mar. 26, 2009) (remanding but reasoning that "properly joined and served" in

U.S. 526, 534 (2004) ("[w]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the te[x]t is not absurd—is to enforce it according to its terms."). In enacting section 1446(b)(2), Congress adopted a "bright-line rule keyed on service" to facilitate a "more easily administered [standard,] than a fact-specific inquiry into a plaintiff's intent or opportunity to actually serve a home-state defendant." *Hong Kong Cont'l Trade Co.,* 2023 WL 2664246, at *5 (quoting *Gibbons v. Bristol-Myers Squibb Company*, 919 F.3d 699, 704–07 (2d Cir. 2019)).

Plaintiff complains that "snap removals" permit defendants to remove before Plaintiff has had a meaningful opportunity to serve them, but "[t]here is nothing in the statute that speaks to [the principle of reasonable opportunity], and courts would be left judging what a reasonable-opportunity-to-service is with no statutory ground rules." Mot. at 21–22; *Choi v. Gen. Motors, LLC*, No. 2:21-cv-05925-GW-MRW, 2021 WL 4133735, at *4 (C.D. Cal. Sept. 9, 2021) (denying the plaintiffs' motion to remand where defendants removed the case to federal court three days after the complaint was filed and before any defendants had been served with process). This is a reasoned tradeoff that Congress accepted in the enactment of the statute.
To the extent Plaintiff disagrees as a matter of policy, "Congress should cure the problem which it created—not this Court." *Lawton v. Hyundai Motor Am., Inc.*, No. 8:23-cv-01797-JVS-KES, 2023 WL 8018100, at *4 (C.D. Cal. Nov. 20, 2023) (rejecting the plaintiff's argument that removal was premature and defective where the plaintiff was unable to serve her complaint because the Superior Court had yet to issue a summons).

---

section 1441(b)(2) is "to prevent plaintiffs from improperly joining forum defendants that they do not actually intend to pursue"—a principle squarely applicable here).

**D. The other prerequisites for diversity have been met.**

1. Plaintiff is domiciled in California.

The Church satisfied its low burden to allege Plaintiff's domicile by alleging "that Plaintiff is a citizen of California" based on Plaintiff's own allegation that he was a California resident at the time he filed his Complaint. Notice of Removal ¶ 5, Doc. No. 1. While residency is not equivalent to domicile, "[t]he place where a person lives is taken to be his domicile until facts adduced establish the contrary." *Anderson v. Watts*, 138 U.S. 694, 706 (1891); *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986) (allegations of residency in a state court complaint can create a rebuttable presumption of domicile supporting diversity of citizenship); *Adams v. W. Marine Prod., Inc.*, 958 F.3d 1216, 1221 (9th Cir. 2020) ("[A] person's residence constitutes *some* evidence of domicile.") (emphasis in the original); *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) ("[T]he place of residence is *prima facie* the domicile."); *Stine v. Moore*, 213 F.2d 446, 448 (5th Cir. 1954) ("[T]he place of residence is prima facie the domicile.").

The Ninth Circuit has ruled that identical allegations were sufficient. *See Ehrman v. Cox Commc'ns, Inc.,* 932 F.3d 1223, 1227–28 (9th Cir. 2019) (concluding that defendant's jurisdictional allegations were sufficient by providing a short and plain statement, based on information and belief, that plaintiffs "were citizens of California" and "need not contain evidentiary submissions"); *Carolina Cas. Ins. Co. v. Team Equip., Inc.*, 741 F.3d 1082, 1086–88 (9th Cir. 2014) (acknowledging that a defendant's removal petition may include allegations based on information and belief when the information necessary to establish diversity jurisdiction was not reasonably available).

In any event, there is ample evidence to support Plaintiff's California domicile. Plaintiff alleges he is a California resident. Compl. ¶ 3. And public records reflect Plaintiff has a current address in California, is registered to vote in California, was last employed in California, and has had continuous addresses in

California for over 20 years. Berkenkamp Decl. ¶ 6. Such evidence alone, and especially in the absence of contrary evidence, is sufficient to establish by a preponderance of the evidence Plaintiff is domiciled in California.

2. The $75,000 amount in controversy is satisfied.

Plaintiff does not dispute the amount in controversy exceeds $75,000. Thus, "the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee Basin*, 574 U.S. at 87.

In any event, the Church demonstrated the "facially apparent" allegations in the complaint evidence the amount in controversy exceeds $75,000. *See* Notice of Removal ¶¶ 15–19; *see also Kenneth Rothschild Tr. v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002) ("This [preponderance] burden can easily be met if it is facially apparent from the allegations in the complaint that plaintiff's claims exceed $75,000.") Plaintiff alleges he "suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages" (Compl. ¶ 68, Doc. No. 1-1) for childhood sexual abuse support the amount in controversy is satisfied, consistent with similar cases in this district.[11]

[11] *See, e.g.*, *Shenko v. Coulter*, No. 2:22-cv-09232-MEMF-PVC, 2023 WL 3101523, at *1 (C.D. Cal. Feb. 28, 2023) (seeking damages in excess of $300,000,000 in an action brought under California's Child Victims' Act); *A.B. v. Regents of Univ. of California*, No. 2:20-cv-09555-RGK-E, 2021 WL 3030191, at *1 (C.D. Cal. Jan. 8, 2021) (granting class action settlement where defendant UCLA was to create a $73 million, non-revisionary settlement fund to pay class members who suffered sexual abuse by an employee of UCLA); *Von Bradley v. Dep't of Child. & Fam. Servs.*, No. 2:17-cv-06556-JFW-AGR, 2018 WL 7291450, at *2 (C.D. Cal. Dec. 12, 2018), report and recommendation adopted sub nom. *Van Bradley v. Dep't of Child. & Fam. Servs.*, No. 2:17-cv-06556-JFW-AGR, 2019 WL

**E. Plaintiff's supplemental authorities do not require remand.**

Plaintiff recently filed a notice of supplemental authority presenting two unreported district court orders on motions to remand. Docket No. 9. Neither order found grounds to remand on an argument Plaintiff made here. In *Jane Roe KL 66 v. Doe 1, et al.*, No. 2:24-cv-07661-AMO, 2024 WL 5264039 (N.D. Cal. Dec. 31, 2024), the court ruled that remand was proper because all defendants had fictitious names and therefore possessed no citizenship under 28 U.S.C. § 1441(b). Such an oversimplification would allow Plaintiff to name Doe defendants to defeat diversity, even though the Doe defendants have been sufficiently identified and are only referred to as "Does" in the complaint to comply with California Code of Civil Procedure section 340.1, subdivision (l) (2023). Plaintiff does not dispute those facts and did not argue in his motion the case should be remanded under 28 U.S.C. § 1441(b). And in this District, courts have repeatedly ruled that Section 1441(b)'s general rule is inapplicable where, like here, "a plaintiff's allegations give a definite clue about the identity of the fictitious defendant…." *Collins v. Garfield Beach CVS, LLC*, No. 2:17-cv-03375-FMO-GJS, 2017 WL 2734708, at *2 (C.D. Cal. 2017) (quoting *Brown v. TranSouth Fin. Corp.*, 897 F. Supp. 1398, 1401 (M.D. Ala. 1995)); *see also Mason v. Home Depot U.S.A., Inc.*, No. 2:24-cv-02428-MRA-MAR, 2024 WL 3029500, at *3 (C.D. Cal. June 17, 2024) (same); *Sandoval v. Republic Servs., Inc.*, No. 2:18-cv-01224-ODW-KSx, 2018 WL 1989528, at *3 (C.D. Cal. Apr. 24, 2018) (same).

---

587282 (C.D. Cal. Feb. 13, 2019) (seeking compensatory damages of $1,750,000 and punitive damages of $4,500,000 in an action stemming from childhood sexual abuse); *Oliver v. Luner*, No. 2:18-cv-02562-VAP-AFM, 2018 WL 5919471, at *2 (C.D. Cal. Aug. 3, 2018) (seeking damages of $250,000,000 and punitive damages in an action for sexual battery, intentional infliction of emotional distress, negligent infliction of emotional distress, and respondeat superior).

In *Roe AH 71 v. Doe 1, et al.*, No. 2:24-cv-09544-FMO-JCx, 2024 WL 5233145 (C.D. Cal. Dec. 27, 2024), the court remanded the case for insufficient allegations of the plaintiff's citizenship and amount in controversy. Again, Plaintiff challenges neither of those grounds here. In any event, the Church included substantial allegations and supporting evidence here establishing Plaintiff's domicile in California. Similarly, the Church included evidence here in its notice of removal that the "facially apparent" allegations in the complaint demonstrate the amount in controversy exceeds $75,000, based on similar cases in this district. *Kenneth Rothschild Tr. v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002).

If the Court is looking for decisions by other judges in this district as a guide in determining whether a stake is a separate legal entity capable of defeating diversity, it need look no further than the on-point decision in *Jane Roe JW 142 v. The Church of Jesus Christ of Latter-day Saints, et al.*, which was discussed earlier.

## V. CONCLUSION

Diversity jurisdiction exists and the Court should therefore deny Plaintiff's motion to remand this case to the state court.

Dated: January 13, 2025 LARSON LLP

By: ______________________

Rick Richmond
Andrew E. Calderón
Jina Yoon
Attorneys for Defendants Doe 1, a Utah corporation sole, and Doe 2, a Utah nonprofit corporation

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants, certifies that this brief contains 6921 words, which complies with the word limit of L.R. 11-6.1.

Dated: January 13, 2025

LARSON LLP

By: [signature]

Rick Richmond
Andrew E. Calderón
Jina Yoon
Attorneys for Defendants Doe 1, a Utah corporation sole, and Doe 2, a Utah nonprofit corporation